SEAFARER Employment Agreement 2014 v.7.2

# SEAFARER EMPLOYMENT AGREEMENT

made between

THE EMPLOYER: SEAVISIONS, LTD

A CAYMAN ISLANDS Company

and

THE EMPLOYEE (the Seafarer): Linnea Wexler

| | |
|---|---|
| YACHT: | SOLEMATES |
| FLAG: | CAYMAN ISLANDS |
| IMO NUMBER: | 1010337 |
| CALLSIGN: | ZGAS8 |
| VESSEL OWNER: | SEAVISIONS, LTD |

| | | | | |
|---|---|---|---|---|
| 1 | Last Name: | | Wexler | |
| | First and Middle Names: | | Linnea Danielle | |
| | Address: | | Via Delle Caldale 1R | |
| | | | 50125 | |
| | | | Florence | |
| | | | Italy | |
| | | | N/A | |
| 2 | Birth: Date and Place MUST BE OVER 16 YEARS OLD | DATE | PLACE New York, USA | |
| 3 | Passport: Nationality / Number / Expiry | NTL  SWE | NUMBER | DATE  28-Mar-16 |
| 4 | Repatriation: Country / Airport City | RES  Italy | AIRPORT LOCATION  Florence | |

PRINCIPAL TERMS: (it is the intention of this agreement to be interpreted in compliance with applicable laws)

| 5 | Position Title(s): | PRIMARY TITLE  Sous Chef | | SECONDARY TITLE  N/A | |
|---|---|---|---|---|---|
| 6 | Consolidated Wages: | Currency | Amounts per the below Arrangements | | Paid |
| | Seafarer will be paid as indicated to the right > | USD | Pay 1 | Pay 2 | Monthly; in arrears, by electronic bank transfer |
| | | | 5,400 | 0 | |

MLC Consolidated: Consolidated Wage includes Straight-time pay and Over-time pay hours even if and when the actual workload may not have required over-time hours during the month

| 7 | Paid Annual Leave: | 38 DAYS | For and within each 12 months of employment; National Holidays are included | |
|---|---|---|---|---|
| 8 | Employment Period: | Employment Commences | | End of Contract |
| | Intended Date / Port: | DATE 03-Oct-14 | PORT La Ciotat, France | DATE 30-Sep-15  PORT TBD |

| 9 | Special arrangements: i.e., additional: travel, vacation, other benefits, position rotation, temporary employment, port-to-port, etcetera | General: *One (1) round trip Seaman's coach flight to registered home per year, or as approved by manager.<br><br>* 38 days leave must be taken per year<br><br>Pay 1 explained: Monthly salary x 12 months<br>Pay 2 explained: N/A |
|---|---|---|

| 10 | Additional Arrangements:<br>a) Number of National Holidays for Flag is to be included in the total Paid Annual Leave Article 7, and is: 8 days<br>b) Rotational crew will have leave days and holidays consolidated within their rotation allotment; therefore Article 7 is not applicable: N/A. See Clause E.1 | 11 | To be completed by Seafarer:<br>Tax Country: SWE<br>Tax Liable (Y/N): N<br><br>To be completed by Manager:<br>Tax Number: N/A<br>Tax Withheld (Y/N): N<br>Additional Information on File (Y/N): N |
|---|---|---|---|

Employee's Initials  LW


EXHIBIT 6

SEAFARER Employment Agreement 18.Jul.13 v.7

DEFINITION OF TERMS USED IN THIS EMPLOYMENT AGREEMENT:

| | |
|---|---|
| Agreement | means: this Employment Agreement, together with the Annexes |
| Annexes | means: additional terms of employment, attached to this Agreement |
| Consolidated Wage | means: total straight and overtime amount listed in Article 6 of the Principal Terms |
| Employer | means: SEAVISIONS, LTD |
| Master | means: the Yacht's captain |
| Seafarer | means: Linnea Wexler |
| Yacht | means: SOLEMATES |
| Crew Administrator | means: Wright Vessel Operations llc |
| Yacht Owner | means: SEAVISIONS, LTD |
| You and Your | means: Seafarer |

A. GENERAL EMPLOYMENT TERMS

1. Employment on board will be according to applicable international and national laws as required by the Yacht's Flag-state.
2. The Seafarer accepts employment by the Employer for the employment period specified in Article 8 of the Principal Terms listed above to serve in the capacity specified in Article 5 of the Principal Terms listed above on the Yacht. A brief description of the general responsibilities and duties of the Seafarer is set forth in the Annexes.
3. The Seafarer will be required to:
   a. undertake tasks that are usual for the maritime position indicated in this Agreement and other shipboard procedures or guidelines and carry out such additional or alternative tasks in connection with the business of the vessel as may from time to time reasonably required of him/her;
   b. be aware that he/she is at all times a representative of the Employer and therefore to behave, whether or not on duty, to an exemplary standard;
   c. maintain at his/her own expense any and all professional qualifications required for the capacity in which engaged under this Agreement; and
   d. be in possession of a valid medical fitness certificate upon entering into this Agreement; the cost of renewing the medical certificate during the period of the Seafarer's employment under this Agreement will be borne by the Employer.
4. This Agreement incorporates the Annexes which together set out the contractual terms and conditions that apply to your employment with the Employer replacing all previous contracts, discussions and correspondence regarding terms of employment and constitute the entire agreement between you and the Employer on the subject matter.
5. It is a condition of your employment that you sign this Agreement as and when required and comply with the all terms contained herein. This Agreement may be amended from time to time but will remain in compliance with Flag-state requirements. You will be given the opportunity to review and sign any amendments.
6. You will perform, at all times, faithfully, industriously, and to the best of your ability, experience, and skill, all of the duties that may reasonably be assigned, to deal with other's property in good faith, to conduct yourself in an appropriate manner, and follow all applicable rules, regulations and laws and the terms of this Agreement for the full duration of your employment, including during any termination notice period.
7. You agree to familiarise yourself with all content of all shipboard instructions and procedures, comply with the requirements therein and refer to these as and when appropriate to ensure your continued compliance.
8. The Owner appoints [ the Crew Administrator ] to act as its Agent in all matters relating to this Agreement.
9. The parties specifically agree that any of the Employer, the Yacht Owner, the Crew Administrator, or superior officers may designate the desired result of the Seafarer's efforts and the manner in with the Seafarer will perform their services hereunder.
10. You will embrace the ethos of team work and cooperation and notwithstanding your job description will willingly and enthusiastically assist others with the various tasks on board to the full extent of your ability as is appropriate or when called upon to do so.
11. You will make every effort to achieve maximum productivity and shall cooperate in the elimination of wasteful practices, restrictions or customs likely to impede maximum productivity.
12. You will fully comply with all instructions, policies, rules and regulations as may be introduced or amended from time to time by the Employer, the Yacht Owner, the Crew Administrator, or superior officers.

SEAFARER Employment Agreement 10.Jul.13 v.2

### B. COMMENCEMENT AND DURATION

1. The start date and the end date or duration of your employment is stated in Article 8 of the Principal Terms listed above. On commencement, your employment will continue until it automatically terminates on your discharge from the Yacht, which will be as close as is reasonably practicable to the stated employment end date, or until it is otherwise terminated in accordance with these terms and conditions.
2. The start date of this employment is also the start date of your continuous employment for the purpose of calculating all statutory and contractual provisions. No employment whatsoever prior to this date will be considered as continuous.
3. No employment liabilities whatsoever arising out of any previous employment with any other employing entity associated with the Yacht Owner, the Crew Administrator, or any agent thereof will transfer to your employment with the Employer.
4. You agree to make yourself available and provide your services exclusively for and to the requirements of the Employer for the full duration of the employment period stated in Article 8 of the Principal Terms listed above, inclusive of any employment termination notice period.
5. This Agreement may be terminated by the parties prior to the stated employment end date as provided herein.

### C. PAY

1. Your level of remuneration and schedule of payment is stated in Article 6 of the Principal Terms listed above. While the Employer will make every attempt to make the payments promptly, no compensation or interest payments will be made in event of delay, unless required by Flag-state or applicable international law.
2. Except where relevant statute provides to the contrary, the Seafarer accepts and acknowledges that none of the Employer, the Yacht Owner, or the Crew Administrator, is responsible for any taxes, national insurance contributions or similar payments payable by or in respect of the Seafarer and the responsibility for the payment of all such taxes, contributions or payments rests with the Seafarer.
3. The account to which you wish your pay to be transmitted must be on the automated clearing system. The cost of wire transfer will be met by the Employer. If a split wire is requested by the Seafarer, the cost of the second wire will be passed to the Seafarer.
4. Should the Seafarer request that a portion of pay is paid in cash on board in a currency different than the currency of this agreement, the exchange rate will be based on the rate and related fees when the cash was transferred on board.
5. Should the Employer make any overpayment to you or you incur any debt or liability to the Employer then you agree that the Employer is authorised to deduct whatever amounts are necessary from your salary or wages until that debt is repaid or liability is discharged.
6. You acknowledge and agree that the remuneration paid by the Employer to you is a private matter and not a matter for general discussion with other members of the crew or other third parties. Accordingly, you agree not to disclose to, or discuss with, other members of the crew (other than the Master) or to any third party the remuneration agreed to between them or any other aspects of the benefits or compensation being paid or reimbursed to you.

### D. STATUTORY WORK AND TRAVEL DOCUMENTS

1. It is your responsibility and a condition of your employment that you have and maintain in your possession an original copy of valid statutory certification and documentation as is appropriate and requisite for the performance of your job, such as your Certificate of Competency, Discharge Book and Medical Fitness Certificate. Once employed, the cost of your seafarer medical certificate physical will be met by the Employer.
2. It is also a condition of your employment that you are at all times in possession of valid documentation such as your passport, appropriate visas and international vaccination certificates necessary to enable you to travel to and from the Yacht. Once employed, the cost of your visas required by the Employer, will be met by the Employer.
3. It is your responsibility to ensure that all such certification and documentation for work and travel has sufficient duration of validity for the full period of any assignment to the Yacht. The Employer may seek to recover from you, to the extent permitted by law, any costs which arise as a result of any failure on your part in this regard.
4. You must keep the Crew Administrator updated in a timely manner and as appropriate regarding the details and expiry dates of all relevant certification and documentation.

WRIGHT PUBLISHING Inc

Employee's initials __LW__

SEAFARER Employment Agreement 10.04.13 v.3

### E. PAID ANNUAL LEAVE

1. Seafarers, other than those employed on a rotational basis, will be entitled to annual leave at the rate stated in Article 7 of the Principal Terms listed above, and never less than 30 days, in each year of employment. The level of pay during annual leave will be that applicable to the Seafarer as agreed under Articles 6 and 9 of the Principal Terms listed above.
2. Annual leave days shall accrue from the employment commencement date. The annual total allotted leave or rotational leave will be the basis for accrual calculation, i.e. total leave divided by 365 (366 days on Leap Year).
3. All annual leave entitlement must be taken in consideration of the Yacht's operational schedule and the Employer may occasionally compel Seafarers to utilise some or all of their annual leave entitlement at a time that suits the Yacht's operational circumstances due to those circumstances.
4. Unused annual leave entitlement will not carry forward into the next year of service unless approved by the Employer for reasons not related to the Seafarer such as when operational circumstances prevent reasonable annual leave requests from being granted. The Employer may, at its sole discretion, liquidate such unused annual leave entitlement to pay out the balance on a per-day basis, instead of approving it being carried forward providing this does not contravene statutory provision.
5. The seafarer is entitled to national holidays (see Article 10.a) which shall be taken at a mutually agreeable time to suit operational requirements and in full agreement with the master
6. During the Employment Period, at time(s) of leave, the Yacht Owner will provide economy seaman's fare roundtrip airline flight(s) to the Seafarer's repatriation airport listed on the first page of this Agreement, unless the parties agree to a substitute location.
7. If your employment commenced or terminates part way through the year, your entitlement to be paid annual leave during that year will be assessed on a pro rata basis. Deduction from final salary due to you on termination of employment will be made in respect of any paid annual leave taken in excess of your entitlement.
8. You will be entitled to payment in lieu of paid annual leave accrued due but untaken as of the date of termination of employment.
9. The liquidated value of annual leave entitlement to be paid in lieu of or recovered from the Seafarer shall be calculated by dividing the Consolidated Wage annual salary by 365 (366 days on Leap Year) and multiplying the sum by the number of days due.
10. For Seafarers employed on a rotational basis, all annual leave and holiday entitlement, inclusive of statutory provision and public holidays, is included within and satisfied by the time off the Yacht (leave) provided by the rotational duty roster; the ratio of time on the Yacht to time off is stated in Article 9, Special Arrangements, of the Principal Terms listed above. The rotational duty roster will be set by the Crew Administrator.
11. Travel days to the vessel and to the repatriation location noted in Article 4, or other mutually agreed location, are paid and not deducted from earned vacation days.

### F. HOURS OF WORK AND REST

1. The Seafarer acknowledges that there are no normal working hours associated with their employment and that the Seafarers shall be required to work at such times and for such periods as are necessary for the efficient discharge of the Seafarer's duties, at sea or in port, which will include nights, weekends, and bank, public, or statutory holidays
2. Schedules shall be in compliance with hours of rest as required by Flag-state and by the International Convention on the Standards of Training and Certification of Watchkeepers (STCW78, as amended).
3. Your hours of work will be arranged such as to ensure that you receive a minimum of 10 hours available for rest in each 24-hour period and a minimum of 77 hours rest in each 7 day period. Your hours of rest in each 24-hour period may be divided into no more than two periods, one of which shall be at least 6 hours in length, and the interval between rest periods shall not exceed 14 hours.
4. The records of your hours of rest are required to be endorsed by the Master or a person authorized by the Master, and by you. A copy of the record, as endorsed, will be presented to you on a monthly basis, in English or the language of the ship.
5. You may be required, at the absolute discretion of the Master, to work additional hours in the case of an emergency or drill or in other overriding conditions. In such circumstances, you will be subsequently provided with compensatory rest period(s).
6. Night work of Seafarers under age of 18 is prohibited.

### G. PLACE OF WORK

1. The Seafarer accepts that their duties will be required on the Yacht, worldwide, wherever the programme for the Yacht requires. Employment on board is for an unlimited geographical area.

SEAFARER Employment Agreement 18 Jul 13 v.7

### H. HEALTHCARE REQUIREMENTS, TESTS AND PLAN

1. You acknowledge that your employment is dependent upon medical examinations to confirm that you are fit and able for employment aboard the Yacht. It is a condition of employment that you submit, as and when required, to medical examinations, including drug testing, by any medical authority nominated by the Employer or the Crew Administrator on their behalf. The medical examination may include tests for infectious diseases, drug use, and any other tests the Employer deems necessary. You agree to furnish the medical personnel's certificates with respect to the examinations and vaccinations. The delivery of these certificates is a condition precedent to continued employment under this Agreement. You understand that if you fail to pass a physical examination, which determination shall be made by the Employer in its sole discretion on the advice of medical personnel, the Employer shall have the right to terminate this Agreement and your employment. You agree that the Employer may require you to undergo testing for use of drugs or substances at any time, without notice. The cost of such examinations will be met by the Employer.
2. It is understood that all statements made by you in connection with medical examinations shall be deemed representations made pursuant to this Agreement, and any misrepresentation by you in a statement to an examining physician shall constitute "cause" for the Employer's termination of this Agreement and your employment.
3. You agree to report all injuries or illnesses to the Employer immediately. If you must leave the Yacht due to illness or accident for hospitalization or repatriation, you agree to consult a physician appointed by the Employer for examination and report on the results thereof to the Employer if so required.
4. The Employer may, according to all applicable maritime rules, regulations and laws, elect whether or not to offer or continue a healthcare insurance program to any or all of its employees, as well as the content, terms and conditions and duration of the program.
5. If you become sick or injured while employed, you will be paid according to all applicable maritime rules, regulations and laws. You will be provided with medical care on board or at the nearest shore side facility should that become necessary. This medical care will be provided to you free of charge, including access to necessary medicines, medical equipment and facilities for diagnosis, treatment, medical information and expertise. Where practical and appropriate, you will be given leave to visit a qualified doctor or dentist in ports of call for the purpose of obtaining treatment.
6. In the event of your sickness or incapacity, you will be provided with medical care, including medical treatment and the supply of necessary medicines and therapeutic devices and room & board away from home until your recovery or until your sickness or incapacity has been declared of a permanent character, subject to all applicable maritime rules, regulations and laws. In addition, the Yacht Owner will meet the cost of return of your property left on board to you or your next of kin.
7. In the event of your death occurring on board or ashore during a voyage, the Yacht Owner will meet the cost of burial expense, or cremation, and the return of your property left on board to your next of kin.

### I. DRUG AND ALCOHOL POLICY

1. It is a strict condition of your employment that you also comply with the Employer's Drug and Alcohol policy or other Drug and Alcohol policy as may be in force on the Yacht or at any place the Yacht visits if more stringent. The Employer's Drug and Alcohol Policy may be amended from time to time to take account of local requirements, statutory obligations and the current best practice. Any changes will be duly notified through staff notices.
2. You must comply with any requirement of the Employer to sign a declaration agreeing to abide with the provisions of the drug and alcohol policy currently in force.
3. You must agree to undergo any drug and alcohol test in accordance with the Drug and Alcohol policy in force at the time and to the requirements of the Employer or the Crew Administrator.

### J. CONDUCT AND APPEARANCE

1. You will be provided with appropriate personal protective equipment and uniform in accordance with any applicable regulations. Any such issue must be utilised for the purpose for which it was issued and any replacement necessitated by misuse will be to your cost and deducted from your pay.
2. Your conduct, performance and appearance will adhere to the terms of your employment for the full duration of your employment.

Employee's initials _LW_

SEAFARER Employment Agreement 18.04.13 v.1

### K. PERFORMANCE APPRAISAL

1. You are required to cooperate with reviews of your performance to the requirements of the Employer. You will receive a copy of each appraisal report and a copy will be retained in your file by the Employer.
2. You are required to conduct self-performance appraisals to the requirements of the Employer.
3. Unsatisfactory personal performance will be inserted in your employment record.

### L. TRAINING

1. You will cooperate and participate fully in any training provided on board the Yacht.
2. You will also undertake training off the Yacht from time to time as instructed by the Crew Administrator, whether to meet the Employer's or statutory requirements and the cost of any such training will in the first instance be met by the Employer. Any such training must have prior approval of the Crew Administrator.
3. Notwithstanding the preceding paragraph, the cost of training will be recoverable from you on an inverse pro rata basis if you leave employment within 12 months of completion of the training by reason of your resignation or default such as a disciplinary dismissal. You will be advised of such recoverable costs prior to commencing of the training to which they apply.

### M. TERMINATION OF EMPLOYMENT

1. The Employer or the Seafarer may give to the other not less than [          seven (7)] days' notice to terminate the employment of the Seafarer. Unless agreed otherwise in writing, by mutual consent of the Employer and the Seafarer, the notice shall take effect, in accordance with the following provisions:
   a. The notice shall be given in writing and signed by the person giving the notice; and
   b. The notice shall take effect:
      i. at the next port of call following the expiry of the period of the notice where such expiry occurs whilst the Yacht is at sea; or
      ii. at the port in which the notice is given providing the Yacht remains in that port for a period equal to or longer than the period of notice.
2. At the Employer's discretion, the Employer may pay the Seafarer for the termination notice period and end the employment immediately.
3. The Seafarer's employment may be terminated either immediately or at the next port of call:
   a. if medical evidence indicates that the Seafarer is incapable of continuing to perform duties by reason of illness or injury;
   b. if the Seafarer is absent without leave at a time for sailing, except where such absence is beyond the Seafarer's control or could not reasonably have been prevented;
   c. if the Seafarer made a false or misleading statement about any important fact in the Seafarer's application for employment; or
   d. for "cause." For purposes of this Agreement, "cause" shall include, but is not limited to, instances where in the opinion of the Master, the Crew Administrator, the Employer, or the Yacht Owner, your conduct, whether aboard the Yacht or ashore, is such that your continued presence on the Yacht would be likely to endanger the Yacht or any person on board. The following types of conduct, amongst others, will justify such an opinion:
      i. assault;
      ii. willful damage to the Yacht or any property on board;
      iii. theft or possession of stolen property;
      iv. unlawful use, possession, or distribution of drugs or illegal substances or offensive weapons or failure to notify the Master and/or the Crew Administrator of the presence on board of the same which is known to the Seafarer;
      v. persistent or willful failure to perform duties;
      vi. desertion of the Yacht or unauthorized absence for more than 48 hours;
      vii. infringement (aboard or ashore) of the laws of any country to which the Yacht and her crew shall for the time being be subject;
      viii. serious misconduct or willful disobedience by the Seafarer of the lawful orders of the Employer or the Crew Administrator;
      ix. sleeping on watch or abandoning watch in circumstances which might prejudice the safety of the Yacht or persons on board;
      x. smoking or using naked flame or unapproved electric or electronic apparatus in any part of the Yacht where safety might thereby be prejudiced or in prohibited areas;
      xi. intimidation, sexual harassment, coercion or interference with the working of others;

SEAFARER Employment Agreement 18 Jul 13 v. 7

### M. TERMINATION OF EMPLOYMENT, continued

    xii. conduct which seriously detracts from the safe and efficient working of the Yacht or the social well-being of any other person on board;
    xiii. causing or permitting unauthorized persons to be on board the Yacht;
    xix. breach of any representation made by the Seafarer in connection with this Agreement; or
    xx. repeated breaches of lesser infractions after warning. (See Annexes)

4. Where the Seafarer's employment is terminated in accordance with this section, the Seafarer shall be entitled to be repatriated in accordance with the provisions of the repatriation section of this Agreement.
5. The Master shall record in the Seaman's Discharge Book, or in a Certificate of Discharge, confirmation specifying the period of his or her service and the time and place of his or her discharge. Such entries will not contain any statement as to the quality of work of the seafarer concerned or as to his/her wages.

### N. REPATRIATION

1. You are entitled to repatriation, to the Seafarer's repatriation airport listed on the first page of this Agreement, unless the parties agree to a substitute location, at the expense of the Yacht Owner:
   a. in the event of illness or injury or other medical condition requiring your repatriation;
   b. in the event that the Yacht is proceeding to a Warlike Operations Area; or
   c. in circumstances where you are no longer able to carry out your duties under this Agreement or cannot be expected to do so e.g. shipwreck, the sale of the ship or a change in your ship's registration; or
   d. If the Employer terminates this Agreement other than for cause; or
   e. When the Seafarer provides notification as specified in M.1 of this Agreement.
2. In the event the Seafarer is in breach of this Agreement or the Employer terminates this Agreement for cause, the cost of repatriation will be deducted from the Seafarer's wages, not to exceed 1,000.00 US Dollars.

### O. SEAFARER'S COMPLAINT PROCEDURE

If you have a complaint regarding your employment, you will follow the vessel's Seafarer's Complaint Procedure outlined in the Annexes

### P. NATIONAL SEAFARER AGREEMENTS

In addition to this Agreement, if required by Flag-state, you are signed onto the National required Seafarer Agreement. Reference: N/A

### Q. LAW, JURISDICTION AND RESOLUTION OF DISPUTES

1. The parties to this contract hereby stipulate that the terms and conditions laid down herein shall be subject to the applicable provisions of the Maritime Law and Regulations of the Flag-state. Any dispute as to the terms and conditions of this contract shall be resolved in accordance with the Maritime Law and Regulations of the Flag-state.
2. Notwithstanding the rights of the Seafarer to enforce a lien, and notwithstanding the nationality of the Yacht Owner, the Employer, or the Crew Administrator, and where permitted by law, any dispute arising from this Agreement that cannot be resolved amicably shall be referred only and exclusively to arbitration in London in accordance with the provisions of the Arbitration Act of 1996 and as subsequently amended (unless the Parties agree upon a sole arbitrator) each Party appointing an arbitrator and the two arbitrators in the event of a disagreement appointing an umpire whose decision shall be final and binding upon both Parties hereto.

WRIGHT PUBLISHING llc

Employee's initials: LW

SEAFARER Employment Agreement SEA ed. 15 v.7

### R. INTELLECTUAL AND OTHER PROPERTY

In addition to confidentiality and protection of the Employer's, the Yacht Owner's, the Yacht's and the Crew Administrator's intellectual and other property, you agree to return to the Crew Administrator, on termination of employment for any reason, all property of whatever nature (including, but not limited to keys, equipment, uniforms, and documentation) belonging to the Yacht, the Yacht Owner, the Employer, or the Crew Administrator. Documentation includes originals and copies and all digital material and files that are the property of the Yacht Owner, or of a third party that the Yacht Owner has a licensure contract with. The prompt return of such property shall be a condition precedent to the Employer's obligation to pay the Seafarer any earned but unpaid remuneration.

### S. ACKNOWLEDGEMENT OF RECEIPT, REVIEW AND AGREEMENT WITH ANNEXES

Your behavior and performance will adhere to the terms of this Agreement. Your signature on this Agreement will indicate that you have carefully read, understand and agree with the contents. Beyond your position's standard job description, you fully understand and agree that it is impossible to anticipate every event and hence every duty that may arise. Accordingly, you will be directed to work beyond the requirements of this Agreement, and will do so at the best of your ability, and as necessary to ensure that the operation is safe, secure and successful. Your initials below will signify that you have received, reviewed, understand and agree with the Annexes listed below:

INITIALS OF SEAFARER

- _LW_ Annex 1: Additional Ship's Policies v.7
- _LW_ Annex 2: Seafarer Responsibility Descriptions v.7
- _LW_ Annex 3: Seafarer's Complaint Procedure v.7
- ____ Annex 4: N/A
- ____ Annex 5: N/A
- ____ Annex 6: N/A

### T. SIGNATURES TO CONFIRM ACCEPTANCE OF AGREEMENT TERMS AND CONDITIONS

Each party to this Agreement warrants that they have obtained all requisite authority and permissions to enter into this Agreement.

SEAFARER: I confirm that I have freely entered into this Agreement with a sufficient understanding of my rights and responsibilities and I have been given an opportunity to review and seek advice on this Agreement before signing.

Signature of Seafarer: _Linnea Wexler_     Date: _10/14_ (dd/mmm/yy)

EMPLOYER / AUTHORIZED REPRESENTATIVE: I confirm that the Seafarer has been informed of their rights and duties under this Agreement prior to or in the process of the Seafarer's engagement onto the Yacht.

Signature of Employer / Authorized Representative: _____

Name, Title, Company of Representative: Captain Richard Fuller as Agent for Seavisions, Ltd.

Date when this agreement is entered into: _14-OCT-14_ (dd/mmm/yy)

| | |
|---|---|
| ADDRESS OF OWNER: | Seavisions, Ltd. Floor 4, Willow House, Cricket Square P.O. Box 268, Grand Cayman KY1-1104 |
| ADDRESS OF EMPLOYER: | Seavisions, Ltd. Floor 4, Willow House, Cricket Square P.O. Box 268, Grand Cayman KY1-1104 |
| ADDRESS OF ADMINISTRATOR: | WVO LLC, 800 South Andrews Avenue, Suite 200, Fort Lauderdale, FL 33316, USA |

NAME AND CONTACT INFORMATION OF NEXT-OF-KIN WHO WILL BE INFORMED OF THE SEAFARER'S INCAPACITY AND WHO WILL RECEIVE SPECIFIED INJURY OR DEATH BENEFITS: Karin Wexler (Mother) +1 914 287 6494 karinwexler@aol.com

END
See Annexes for additional Terms     Employee's Initials _LW_

WRIGHT PUBLISHING Inc.