UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 16-cv-62704-BLOOM/Valle

LINNEA WEXLER,

    Plaintiff,
v.

SOLEMATES MARINE, LTD.
and SEAVISIONS, LTD.,

    Defendants.
_____/

## ORDER

**THIS CAUSE** is before the Court upon: (1) Defendant Seavisions, Ltd.'s ("Seavision") Motion to Dismiss and Compel Arbitration, ECF No. [17]; (2) Defendant Solemates Marine Ltd.'s ("Solemates Marine") Motion to Dismiss, ECF No. [18]; and (3) Plaintiff Linnea Wexler's ("Plaintiff") Motion to Remand, ECF No. [24]. The Court has reviewed the Motions, all opposing and supporting submissions, the record and the applicable law, and is otherwise fully advised. The Motions are inextricably intertwined and the Court addresses them concurrently. For the reasons set forth below, Seavisions' Motion to Dismiss and Compel Arbitration is granted, Solemates Marine's Motion to Dismiss is denied, and Plaintiff's Motion to Remand is granted in part.

### I.    BACKGROUND

The facts alleged in the Complaint are as follows. From on or about September 14, 2014 to on or about October 3, 2014, Plaintiff was employed by Solemates Marine as a Sous Chef aboard the yacht Solemates (the "Vessel"), which Solemates Marine owned at the time. ECF No. [1-2] at ¶¶ 7-8. The terms and conditions of Plaintiff's employment with Solemates Marine

aboard the Vessel were provided in a Seafarer Employment Agreement, *see* ECF No. [17-1] ("Solemates Marine SEA").  The Solemates Marine SEA does not contain an arbitration provision. *See id.*

On or about September 30, 2014, Plaintiff was required to participate in a safety drill, during which she was ordered to open a heavy and ill-maintained overhead hatch.  ECF No. [1-2] at ¶ 11.  Plaintiff had not received prior training on how to properly and safely open an overhead hatch and was unable to open the hatch on her first attempt.  *Id.*  While attempting to open the hatch a second time pursuant to the order of the Vessel's First Mate, Plaintiff sustained a significant injury to her neck.  *Id.*

The following day, Plaintiff informed Denise Rodgers ("Ms. Rodgers"), a full-time crew member who was assigned to train Plaintiff and instruct Plaintiff on the Vessel's policies and procedures, of her injury.  *Id.* at ¶¶ 10, 13.  Ms. Rodgers did not inform Plaintiff of any formal reporting procedures or of any rights she may have had to obtain medical treatment, and Solemates Marine did not provide Plaintiff with any medical care despite having been notified of Plaintiff's injury.  *Id.* at ¶ 13.

Plaintiff remained employed with Solemates Marine aboard the vessel until on or about October 3, 2014, when the Vessel was sold to Seavisions.[1]  *Id.* at ¶¶ 14-15.  On or about October 14, 2014, Plaintiff began employment with Seavisions, retaining her position as a Sous Chef aboard the Vessel.  *Id.* at ¶ 16.  As part of that employment, Plaintiff signed a Seafarer Employment Agreement with Seavisions, *see* ECF No. [17-6] ("Seavisions SEA").  Unlike the Solemates Marine SEA, the Seavisions SEA does contain an arbitration provision.  *See id.*

---

[1] At or around that same time, the Vessel came under the management of Wright Maritime Group, LLC ("Wright Management Group").  *Id.* at ¶ 15.

2

Plaintiff informed both the Vessel's new captain, Captain Fuller, and the Vessel's nurse of her injury and that the resulting pain was worsening. ECF No. [1-2] at ¶ 18. Despite being informed of Plaintiff's injury, however, Seavisions did not provide Plaintiff with shoreside medical care and instead required her to continue working onboard the Vessel for the next several weeks, during which time Plaintiff's injury was exacerbated by rough seas. *Id.* at ¶ 19.

In early November of 2014, the Vessel returned to Florida, where it operated for at least the next two months. *Id.* at ¶ 20. Around this time, Captain Fuller was replaced by Captain Paul Knox, whom Plaintiff also informed of her injury. *Id.* Plaintiff remained in constant pain during this time, but Seavisions continued to fail to provide Plaintiff with any medical care. *Id.*

On or about November 27, 2014, Plaintiff signed off the vessel due to a family emergency and traveled to New York. *Id.* at ¶ 21. Upon signing off the vessel, Plaintiff left behind various items of personal property that Seavisions never returned to her. *See id.* at ¶¶ 53, 55-56. Once in New York, Plaintiff took it upon herself to seek medical care for her injury. *Id.* at ¶ 21. As part of her medical treatment, Plaintiff received an MRI on her cervical spine, which revealed that she had sustained a C5/6 left posterolateral disc herniation causing compression on the left spinal cord and posterior displacement of the left C7 nerve root. *Id.* at ¶¶ 21-22. Plaintiff provided Captain Knox and Wright Management Group with updates of her medical condition. *Id.* at ¶ 23. Thereafter, Plaintiff, as advised, provided Captain Knox and Wright Management Group with a declaration from her doctor indicating that she was not fit for duty in order to be placed on paid sick leave. *Id.*

Neither Seavisions nor Solemates Marine (collectively, "Defendants") paid for Plaintiff's medical care or provided her with sick wages, nor did they pay for her lodging and daily sustenance while she remained unfit for duty, despite her demand for each. *Id.* at ¶ 24.

Based on these allegations, on July 7, 2016, Plaintiff brought this action against Solemates Marine and Seavisions in Broward County Circuit Court. Plaintiff requests a jury trial and asserts the following claims: Jones Act negligence against Solemates Marine and Seavisions (Counts I and VI); unseaworthiness against Solemates Marine (Count II); failure to provide maintenance and cure against Solemates Marine and Seavisions (Counts III and VII); unseaworthiness under Cayman Island merchant law against Solemates Marine (Count IV); failure to provide relief and maintenance under Cayman Island merchant law against Solemates Marine and Seavisions (Counts V and IX); and conversion of property against Seavisions (Count VIII).[2] All nine counts stem from events that took place in 2014 aboard the Vessel.

On November 16, 2016, Seavisions, with the consent of Solemates Marine, removed the case to this Court pursuant to 28 U.S.C. § 1441, *et seq.*, and 9 U.S.C. § 205. *See* ECF No. [1]. Under 9 U.S.C. § 205, removal to the U.S. district court is allowed at any time before trial where the subject matter of an action pending in state court "relates to an arbitration agreement or award falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards]." 9 U.S.C. § 205. Seavisions, in its Motion to Dismiss and Compel Arbitration, ECF No. [17], requests that the Court compel arbitration of each of Plaintiff's claims against Seavisions pursuant to the arbitration provision included in the Seavisions SEA. Alternatively, Seavisions seeks dismissal of Plaintiff's Complaint on the bases of insufficient service of process, lack of personal jurisdiction, *forum non conveniens*, and failure to state a claim. *See id.* Likewise, Solemates Marine, in its Motion to Dismiss, ECF No. [18], seeks dismissal of Plaintiff's Complaint on the same bases, though Solemates Marine's Motion to Dismiss does not request that Plaintiff's claims against Solemates Marine be compelled to arbitration. Plaintiff, in

---

[2] Both the Solemates Marine SEA and the Seavisions SEA contain choice-of-law provisions which provide that that their respective terms and conditions are subject to the laws of the Vessel's flag-state—the Cayman Islands. *See* ECF No. [17-1] at 1, 13; ECF No. [17-6] at 1, 7.

her Motion to Remand, ECF No. [24], requests that the Court remand the entire case to Broward County Circuit Court pursuant to 28 U.S.C. § 1447 because (1) there exists no arbitration agreement between Plaintiff and Solemates Marine, and (2) Plaintiff's personal injury and conversion claims against Seavisions are not covered by the arbitration agreement between them. *Id.*

## II.     LEGAL STANDARD

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention") requires courts of signatory nations, such as the United States, to give effect to private arbitration agreements and to enforce arbitral awards made in signatory nations. United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, art. I(1), June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3; *see also Sierra v. Cruise Ships Catering & Servs. Int'l, N.V.*, 631 F. App'x 714, 715-16 (11th Cir. 2015). The United States enforces its agreement to the Convention's terms through Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. §§ 201-208.

In ruling on a motion to enforce an arbitration agreement under the Convention, a district court conducts a "very limited inquiry." *Bautista v. Star Cruises*, 396 F.3d 1289, 1294 (11th Cir. 2005). As a threshold matter, "[u]nder both the FAA and the Convention 'the first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate' it." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 n.9 (11th Cir. 2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 626 (1985)). In other words, "the parties will not be required to arbitrate when they have not agreed to do so." *Id.* at 1214 (quoting *Goldberg v. Bear, Stearns & Co.*, 912 F.2d 1418, 1419 (11th Cir. 1990)). That determination is guided by FAA principles. *Id.* at 1213 n.9.

Beyond that threshold consideration, an arbitration agreement is governed by the Convention if four jurisdictional prerequisites are met: (1) the agreement is "in writing within the meaning of the Convention"; (2) "the agreement provides for arbitration in the territory of a signatory of the Convention"; (3) "the agreement arises out of a legal relationship, whether contractual or not, which is considered commercial"; and (4) one of the parties to the agreement is not an American citizen. *Bautista*, 396 F.3d at 1294 n. 7. If the agreement satisfies those jurisdictional prerequisites, the district court must order arbitration unless any of the Convention's affirmative defenses apply. *Id.* at 1294-95. "That is, arbitration is mandatory unless the plaintiff proves that the agreement is 'null and void, inoperative or incapable of being enforced.'" *Azevedo v. Carnival Corp.*, 2008 WL 2261195, at *3 (S.D. Fla. May 30, 2008) (quoting *Vacaru v. Royal Caribbean Cruises, Ltd.*, 2008 WL 649178, at *4 n.3 (S.D. Fla. Feb. 1, 2008)). The Convention "generally establishes a strong presumption in favor of arbitration of international commercial disputes." *Bautista*, 396 F.3d at 1295 (citation omitted).

## III. DISCUSSION

Subject matter jurisdiction in this case is ultimately dependent on the applicability of the arbitration clause of the Seavisions SEA under which Plaintiff worked for Seavisions as a Sous Chef aboard the Vessel. Of course, prior to working for Seavisions, Plaintiff also worked as a Sous Chef aboard the Vessel for Solemates Marine pursuant to a different Seafarer Employment Agreement—the Solemates Marine SEA—which did not contain an arbitration agreement. Overall, if the arbitration clause in the Seavisions SEA is applicable to all of the claims at issue, including the claims made against Solemates Marine, then the Court has subject matter jurisdiction to compel arbitration of all of those claims pursuant to the Convention and its enabling legislation, 9 U.S.C. § 201, *et seq.* If, on the other hand, the arbitration clause of the

Seavisions SEA is not applicable to some or all of the claims at issue, then the Court does not have subject matter jurisdiction of those claims and those claims must be remanded.

### A. Plaintiff's Claims against Solemates Marine

As mentioned, the Solemates Marine SEA governing Plaintiff's employment with Solemates Marine did not contain an arbitration clause, whereas the Seavisions SEA governing Plaintiff's employment with Seavisions did contain an arbitration clause. Nonetheless, Solemates Marine, though a non-signatory to the Seavisions SEA, consented to removal pursuant to the Convention. *See* ECF No. [1]. In support of remand of her claims against Solemates Marine, Plaintiff argues that Solemates Marine may not rely on the Seavisions SEA to compel arbitration because Solemates Marine essentially waived any standing to compel arbitration by failing to raise the issue in its respective Motion to Dismiss and by having previously conceded, through counsel, that remand is appropriate. *See* ECF No. [24] at 5-6; ECF No. [38] at 1-3. Solemates Marine counters by arguing in the Response to Plaintiff's Motion to Remand that it may compel arbitration despite being a non-signatory to the Seavisions SEA because the Complaint and operative facts demonstrate that Plaintiff's claims against Seavisions and Solemates Marine are intertwined. ECF No. [32] at 1-3.

As Plaintiff correctly points out, neither Solemates Marine or Seavisions—who are represented by the same counsel—has actually moved the Court to compel arbitration of the claims against Solemates Marine. Specifically, unlike Seavisions' Motion to Dismiss and Compel Arbitration, Solemates Marine's Motion to Dismiss makes no mention whatsoever of arbitration in seeking dismissal of the Complaint. *Compare* ECF No. [17] at 4-9, *with* ECF No. [18]. Indeed, Seavisions' Motion to Dismiss and Compel Arbitration outright rejects both the

propriety of compelling the claims against Solemates Marine to arbitration and the Court's jurisdiction over those claims:

> While the interests of judicial efficiency would best [sic] served by the claims against both parties to proceed to arbitration, the Defendants must candidly concede Plaintiff's employment agreement with Defendant Solemates Marine Ltd. does not contain an arbitration provision. There is no written agreement to arbitrate between Plaintiff and Solemates Marine Ltd. Unfortunately, the circumstances do not support the equitable estoppel mechanism to compel a non-signatory to arbitration. . . . Therefore, it appears that *while the claims against Seavisions Ltd. must be arbitrated, the claims against Solemates Marine, Ltd. should be remanded to proceed in state court*.

ECF No. [17] at 6 n.2 (citation omitted) (emphasis added). However, in an about-face, Defendants now request in their Response to Plaintiff's Motion to Remand—filed after Defendants' respective Motions—that the claims made against Solemates Marine be compelled to arbitration on the basis that those claims and the claims made against Seavisions are intertwined so as to support an application of equitable estoppel.[3] *See* ECF No. [32] at 1-3. Irrespective of whether the claims against Solemates Marine and Seavisions are intertwined, however, the fact remains that the Court does not have before it a motion to compel arbitration of the claims against Solemates Marine. Given this, and in light of the initial position that the claims against Solemates Marine are not subject to compulsion to arbitration and should instead be remanded, the Court finds no occasion to compel the claims against Solemates Marine to arbitration. *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Cahill*, 1996 WL 50614, at *5 (E.D. Pa. Jan. 31, 1996) ("Cahill never filed a separate motion to compel arbitration . . . . Instead, he filed a motion to dismiss on the ground that the Court lacked jurisdiction to hear this action. This motion did not mention arbitration . . . . On this record, the Court finds that Defendant Cahill has waived his right to mandatory arbitration in this action . . . .").

---

[3] It is worth noting that Defendants' Response to Plaintiff's Motion to Remand does not address the contrary position asserted in Seavisions' Motion to Dismiss and Compel Arbitration. *See* ECF No. [32].

In any event, with respect to the argument that the claims against Solemates Marine and Seavisions are sufficiently intertwined for purposes of applying equitable estoppel, Solemates Marine has ignored a threshold inquiry by failing to show or even argue that the contract law governing here—namely, that of the Cayman Islands—would allow for the application of equitable estoppel in this context in the first place. As stated by the Eleventh Circuit: "A rule of contract law is that one who is not a party to an agreement cannot enforce its terms against one who is a party. . . . The right of enforcement generally belongs to those who have purchased it by agreeing to be bound by the terms of the contract themselves." *Lawson v. Life of the S. Ins. Co.*, 648 F.3d 1166, 1168 (11th Cir. 2011) (internal citations omitted). In the arbitration context, "arbitration is a matter of contract [and] the FAA's strong proarbitration policy only applies to disputes that the parties have agreed to arbitrate." *Id.* at 1170 (alteration in the original) (citations omitted). And as explained by the Supreme Court in *Arthur Anderson LLP v. Carlisle*, 556 U.S. 624 (2009), "an exception to that rule is that a nonparty may force arbitration '*if the relevant state contract law allows* him to enforce the agreement' to arbitrate." *Lawson*, 648 F.3d at 1170 (quoting *Carlisle*, 556 U.S. at 632) (emphasis added).[4] Accordingly, pursuant to the Supreme Court's decision in *Carlisle*, "state law provides the rule of decision" on whether a nonparty can enforce an arbitration clause against a party. *Id.* Here, Solemates Marine makes no indication whatsoever that the contract law of the Cayman Islands—which the parties agree govern in this case—recognizes the equitable estoppel doctrine in this context. This is significant as Solemates Marine bears the initial burden to show that an agreement to arbitrate exists. *See Newman v. Hooters of Am., Inc.*, 2006 WL 1793541, at *2 (M.D. Fla. June 28, 2006) ("Defendants have the burden of producing the Arbitration Agreement and establishing the

---

[4] In *Carlisle*, the Supreme Court noted that a nonparty to a contract may have the legal right to enforce its provisions "through assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver and estoppel." 556 U.S. at 631.

9

contractual relationship necessary to implicate the FAA and its provisions granting this Court authority to dismiss or stay Plaintiff's cause of action and to compel arbitration."); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("[T]he onus is upon the parties to formulate arguments."); *Phillips v. Hillcrest Med. Ctr.*, 244 F.3d 790, 800 n.10 (10th Cir. 2001) ("A litigant who fails to press a point by supporting it with pertinent authority, or by showing why it is sound despite a lack of supporting authority or in the face of contrary authority, forfeits the point. The court will not do his research for him.") (internal quotation marks omitted).

Moreover, even if the Court were to assume that Cayman law does allow for equitable estoppel in this context, the Court disagrees with Solemates Marine's contention that "the Complaint and the operative facts demonstrate that the claims against the two Defendants are intertwined." ECF No. [32] at 2 (citing *MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999), *abrogated on other grounds by Carlisle*, 556 U.S. 624 (2009)); *see generally MS Dealer*, 177 F.3d at 947 (recognizing that equitable estoppel allows a nonsignatory to compel arbitration where the signatory to the contract containing the arbitration clause raises allegations of "substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract") (citation omitted). Solemates Marine's reliance on *MS Dealer*, for example, is misplaced, because nowhere in the Complaint does Plaintiff raise allegations of "substantially interdependent and concerted misconduct" by Defendants—the standard articulated by the Eleventh Circuit in applying the federal equitable estoppel doctrine in this context. 177 F.3d at 947. To the contrary, the Complaint alleges that Defendants engaged in separate and distinct courses of action throughout the duration of separate time periods.

Specifically, it is alleged that Solemates Marine failed to, among other things, properly maintain the overhead hatch that Plaintiff was attempting to open when she suffered her injury on or about September 30, 2014, formulate a proper and safe method of opening the overhead hatch, and properly train Plaintiff on how to safely open the overhead hatch. *See* ECF No. [1-2] at ¶ 26. Importantly, Seavisions did not employ Plaintiff until approximately two weeks later, on or about October 14, 2014, after it took ownership of the Vessel with a new management group. *See id.* at ¶ 16. And in contrast to Solemates Marine's alleged misconduct, Seavisions' alleged misconduct does not stem from the overhead hatch, but instead consists of, among other things, ordering Plaintiff to continue working after being informed of her injury and refusing to return her property. *See id.* at ¶¶ 46, 55-56. To the extent that the Complaint alleges that both Solemates Marine and Seavisions failed to provide Plaintiff with prompt medical care after being informed of Plaintiff's injury and failed to pay for Plaintiff's maintenance and cure benefits, *see id.* at ¶¶ 33-34, 46, 49, the Complaint does not allege that these failures were in any way the product of concerted action by Defendants. Nor could it. According to the Complaint, Solemates Marine's misconduct occurred before Seavisions ever took ownership of the Vessel and all of Seavisions' alleged misconduct took place under a new captain and a new management group. *See id.* at ¶¶ 7-14, 15, 17. In short, the claims against Solemates Marine and the allegations they rely on stand alone.

For these reasons, the Court finds that the Seavisions SEA does not retroactively apply to the events that form the basis of Plaintiff's claims against Solemates Marine. Consequently, Solemates Marine is unable to satisfy the first jurisdictional element of *Bautista*—i.e., "the existence of an agreement in writing within the meaning of the Convention to arbitrate the

11

dispute at issue"—and so remand is appropriate.[5]  *Azevedo*, 2008 WL 2261195, at *5 (finding remand appropriate on jurisdictional grounds under *Bautista* where the claims at issue were not subject to a second seafarer employment agreement containing an arbitration provision).

### B. Plaintiff's Claims against Seavisions

On October 14, 2014, Plaintiff signed the Seavisions SEA, pursuant to which she was employed with Seavisions as a Sous Chef aboard the Vessel. *See* ECF No. [17-6]. The arbitration clause of the Seavisions SEA, located under the section titled "Law, Jurisdiction and Resolution of Disputes," provides that:

> Notwithstanding the rights of the Seafarer to enforce a lien, and notwithstanding the nationality of the Yacht Owner, the Employer, or the Crew Administrator, and where permitted by law, *any dispute arising from this Agreement that cannot be resolved amicably* shall be referred only and exclusively to arbitration In London in accordance with the provisions of the Arbitration Act of 1996 and as subsequently amended (unless the Parties agree upon a sole arbitrator) each Party appointing an arbitrator and the two arbitrators in the event of a disagreement appointing an umpire whose decision shall be final and binding upon both Parties hereto.

*Id.* (emphasis added).  Plaintiff asserts in her Motion to Remand that, consistent with the above language, she and Seavisions "agreed to limit only disputes arising from [the Seavisions SEA] to be submitted to arbitration." ECF No. [24] at 7 (internal quotation marks omitted).  Plaintiff argues that, because the Seavisions SEA lacks "any terms which govern negligent acts committed by the parties which give rise to an injury or exacerbation thereof or disputes

---

[5] Without subject matter jurisdiction over Plaintiff's claims against Solemates Marine under the Convention, the Court is precluded from considering the grounds for dismissal raised in Solemates Marine's Motion to Dismiss, ECF No. [18]. *See Azevedo*, 2008 WL 2261195, at *1 ("Subject matter jurisdiction in this case is dependent on the enforceability and applicability of the Arbitration Clause of the 2006 Seafarer Employment Agreement under which Plaintiff worked for Carnival . . . aboard the cruise ship 'Elation.' . . . . [I]f the Arbitration Clause is null and void, or if it is not retroactively applicable to the alleged events that occurred in 2004 while Plaintiff was a seafarer aboard [another vessel], then *the Court does not have subject matter jurisdiction and the case must be remanded*.") (emphasis added); *see also* ECF No. [32] (Defendants' assertion that "[i]f the Court finds the claims are not intertwined and the claims against Solemates are not subject to arbitration, the Court *properly remands* only the claim against Solemates") (emphasis added).

concerning the conversion of property[,] . . . the parties have not agreed to submit personal injury and property conversion claims"—such as Plaintiff's—to arbitration. *Id.* at 7-8 (citing *Doe*, 657 F.3d at 1218). The Court disagrees.

The Eleventh Circuit has explained that in determining whether a particular dispute "arises out of" a contract, "the focus is on 'whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.'" *Doe*, 657 F.3d at 1218 (quoting *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1116 (11th Cir. 2001)); *see also Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1367 (11th Cir. 2008) ("We have previously focused on foreseeability as [the] proper standard for resolving the scope of an arbitration clause that covers disputes 'arising out of or pursuant to' the contract between the parties."). Accordingly, "'[a]rising out of' requires the existence of some direct relationship between the dispute and the performance of duties specified by the contract." *Doe*, 657 F.3d at 1218; *see also Telecom Italia*, 248 F.3d at 1116 ("Disputes that are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract, and are not covered by the standard arbitration clause."). Those standards are applicable here, as the arbitration clause of the Seavisions SEA covers any dispute "arising from" the Seavisions SEA. ECF No. [17-6].

Applying those standards, the Court finds that all of Plaintiff's claims against Seavisions are well within the scope of the arbitration clause. As explained, the focus here is on contractual duties, and there can be no doubt that Plaintiff's claims against Seavisions arise from specific duties delineated in the Seavisions SEA—both Plaintiff's and Seavisions'. Count VI alleges that Seavisions breached its duty to provide a reasonably safe place to work under the Jones Act, 46 U.S.C. § 3010, and specifically refers to Seavisions' alleged "fail[ure] to provide Plaintiff with

13

prompt, proper and adequate medical care once on notice of her injuries and the worsening thereof." ECF No. [1-2] at ¶ 45-46. Count VII alleges that Seavisions failed to meet its obligation to provide Plaintiff with maintenance and cure, "a traditional maritime law remedy for seamen[,] *Doe*, 657 F.3d at 1221, by "discharg[ing] Plaintiff [when she was] in need of additional medical care but fail[ing] to provide all care or maintenance benefits[,]" ECF No. [1-2] at ¶ 49. Similarly, Count IX alleges that Seavisions failed to meet its obligation under Cayman law to provide Plaintiff with relief and maintenance and specifically refers to Seavisions' alleged "fail[ure] to provide Plaintiff with and/or pay for all medical treatment . . . ." *Id.* at ¶ 61. These claims fall squarely within the scope of the following two provisions of the Seavisions SEA, located under the section titled "Healthcare Requirements, Tests and Plan":

5. If you become sick or injured while employed, you will be paid according to all applicable maritime rules, regulations and laws. You will be provided with medical care on board or at the nearest shore side facility should that become necessary. This medical care will be provided to you free of charge, including access to necessary medicines, medical equipment and facilities for diagnosis, treatment, medical information and expertise. Where practical and appropriate, you will be given leave to visit a qualified doctor or dentist in ports of call for the purposes of obtaining treatment.
6. In the event of your sickness or incapacity, you will be provided with medical care, including medical treatment and the supply of necessary medicines and therapeutic devices and room & board away from home until your recovery or until your sickness or incapacity has been declared of a permanent character, subject to all applicable maritime rules, regulations and laws. . . .

ECF No. [17-6] at 5. The claims set forth in Counts VI, VII, and IX are the immediate, foreseeable result of Seavisions' performance (or lack thereof) of contractual duties under the Seavisions SEA. The same can be said of Count VIII, which alleges that Seavisions "refused to return the property" Plaintiff left behind when she signed off the Vessel. ECF No. [1-2] at ¶¶ 53, 55-56. Specifically, the remainder of paragraph 6 under the section "Healthcare Requirements, Tests and Plan" of the Seavisions SEA, listed above, provides: "In addition, the Yacht Owner

14

will meet the cost of return of your property left on board to you or your next of kin." ECF No. [17-6] at 5.

It is apparent from the document that Plaintiff's assertion that the Seavisions SEA "only contains the terms of [Plaintiff's] employment such as job duties, hours of work, conduct, pay as well as commencement and duration" is simply inaccurate. ECF No. [24] at 7. The Seavisions SEA contains much more—namely, the enumeration of specific duties owed to Plaintiff by Seavisions. The specific misconduct alleged to have been committed by Seavisions in the Complaint directly implicates a number of these contractual duties. Accordingly, the Court finds that the entirety of Plaintiff's dispute against Seavisions arises from the Seavisions SEA. Each of Plaintiff's claims against Seavisions is subject to the Seavisions SEA's mandatory arbitration clause.

**IV.   CONCLUSION**

Based on the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant Seavisions Ltd.'s Motion to Dismiss and Compel Arbitration, **ECF No. [17]**, is **GRANTED**. The Court **COMPELS** arbitration as to Plaintiff Linnea Wexler's claims against Defendant Seavisions Ltd.

2. Defendant Solemates Marine Ltd.'s Motion to Dismiss, **ECF No. [18]**, is **DENIED**.

3. Plaintiff Linnea Wexler's Motion to Remand, **ECF No. [24]**, is **GRANTED in part**. Plaintiff Linnea Wexler's claims against Defendant Solemates Marine Ltd. are **REMANDED** to the Circuit Court of the Seventeenth Judicial Circuit in and for Broward County.

4. The Clerk of Court is directed to **CLOSE** this case and all pending motions in this matter are **DENIED AS MOOT**.

**DONE AND ORDERED** in Miami, Florida, this 13th day of March, 2017.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:  Counsel of Record